We are in session to hear two cases this afternoon. The first one is National Liability&Fire Insurance Company v. Brimar Transit Inc, Pittsburgh Public School District, case number 222565. Counsel for appellate, Adrienne Neer, how many minutes would you like to leave for rebuttal? Your Honor, with the court's permission, I would request four minutes for rebuttal. Sure, we can do that. May I approach? Yes, please. May it please the Court, Wendy Ennerson on behalf of the appellant, National Liability&Fire Insurance Company. We are here before you today following a series of result-oriented decisions by the District Court, all of which defy logic and are contrary to the plain language of the insurance policy at issue and well-settled Pennsylvania law. Ms. Ennerton, let me ask you a quick question. You never did a reservation of rights vis-à-vis the school district, did you? That is incorrect, Your Honor. We did, in fact. There were several reservation of rights letters, the first of which appears . . . But, I mean, before, at the outset of the action, when did you do your reservation of rights letter? So, the initial reservation of rights was issued to the district on February 14, 2020. That's in the record at A785. Now . . . And then, with respect to the Eppley-Brimar, a reservation of rights letter was issued immediately following the filing of the underlying lawsuit. Right. But, the lawsuit was well underway when you issued the reservation of rights to the school district, correct? Well, that's correct, Your Honor. And, the reason why is that because the district, the school district, does not qualify as an insured under the policy issued . . . Well, that's the issue. Okay. The district court went out of its way to find insurance coverage under an auto-liability policy for an underlying lawsuit that arose out of the repeated sexual assault of a young female student by her male classmate. The final of which occurred on a bus. We're well aware of that. What did the district court get wrong? The district court got several things wrong. The first is that the district court grossly mischaracterized the allegations of the underlying complaint to find that the district qualified as an additional insured under the policy of insurance. The provision on which the district court relied is an omnibus insurance provision, which extends coverage only to those who are vicariously liable for the acts or conduct of the named insured. Well, and the district court found that the allegation in the complaint that there was perhaps an agency relationship between Brymar and the district gave rise to the potential for coverage. Isn't that . . . what's wrong with that conclusion? Well, Your Honor, if you look at the allegations of the underlying complaint, they actually speak to the opposite. The paragraphs on which the district court relied speak to Brymar's vicarious liability for the actions or negligence of its driver. There is not a single allegation in this complaint on which the court could have reasonably construed the allegations to find vicarious . . . There is a vicarious liability here. They don't have to use the words vicarious liability, do they? They do not have to. You have to focus on the allegations, not the claims. But it's important to note that there are specific claims in the complaint which are directed solely at the district's failure. The district entered into an agreement with the female student's mother, a separation agreement, an agreement to keep these students separated, not only on the bus, in the lunchroom, in the classes, on a field trip, at recess, reason being the male student was indiscriminate. We are well aware of that. What else did the district court get wrong? The second erroneous ruling by the district court is its holding that the bodily injuries sustained by the female student resulted from the use of the auto. The district court ignored a long line of Pennsylvania cases which consistently and repeatedly hold that if the injuries arise from an intervening act, an assault, an object, that does not fall within the scope of an auto liability policy. It's important to keep that in mind. We are not here with a general liability policy. We are here with an auto policy that solely provides coverage for vehicle-related injuries and damages that result from the use of the auto. So let's just tease that out. It strikes me, if I recall right, that the operative phrase here for the auto coverage is resulting from, which is more narrow than arising out of. Arising out of Pennsylvania courts treat as but for causation. That's how I'm seeing the law on this. It turns out though that why isn't the fact that this occurred on a bus a but for cause? And let me just give you the two points I'd like you to address on this. There was a policy specifically with respect to the bus. And it seems that the bus and its use is governed by its driver. And on the day in question there was a substitute bus driver in a way that might be different than any other day. And so we're in a situation where we say we've got a policy related to a bus and we've got a substitute bus driver. Why isn't that good enough to say these could be but for causes of the injury? Because, Your Honor, you have to look at the instrumentality which causes the injury. And here it's not the bus. It's not the substitute driver. It was the male student who sexually abused this child. So that may take you into exclusion land, right? So, I mean, you aren't going to forego the exclusion argument, right? But I think the point is, I'm just wondering, let me put it this way. When I think but for causation, I think to myself, this never happened on the bus before when it was a regular driver. Never. At least that we know of. Happened on the day of the substitute driver. The driver of the instrumentality changed. And so why isn't that good enough for at least but for causation? Now you may tell me the resulting from is smaller and we should look at that. But I guess my thought is it struck me that to tie this to the bus and to separate the driver from the instrumentality is a little much. I don't know that we do that in normal auto coverage. We say it was a car but let's ignore the driver. They tend to go together, no? Well, Your Honor, Pennsylvania courts do draw that distinction. The court need look no further than its own rulings where it's recognized that cases where there is an altercation on a bus, it doesn't arise out of the use of the bus. It arises out of the actual, the assault, the encounter. But here you're saying that the instrumentality is the boy. But really, the gravamen of the complaint is that the instrumentality is the negligence of Brimer. It's the negligence that is really what this resulted from, resulted from negligence. That's the whole theory of the case. So it resulted from the negligence of Brimer, i.e., the bus company. So why wouldn't it result from the use of this bus? Well, respectfully, we disagree with that characterization of the underlying complaint. The underlying complaint is replete with allegations of the district's breaches of its agreement to the mother. It had entered into a separate agreement with the mother to keep this student safe after the male student sexually assaulted her in a gym months prior. But there was an agreement between Brimer and the district that Brimer would instruct its drivers. And it failed to do it on this one specific day. The district wasn't going to do that that day. Brimer was in charge of the bus, wasn't it? The focus of the scope of coverage is not on the claims. It's on the injuries. And it's whether the injuries resulted from the use of the bus. There is a long line of Pennsylvania cases which squarely hold that when there's an intervening action which causes the injury, that does not give rise to the bus. This court recognized it in U.S. underwriters as well as in Allstate v. Squires. Those cases are directly on all fours here. There's also an allegation here of negligence for failure to inform the substitute driver. Why wouldn't that fall outside the exclusions in the policy? Well, turning to the exclusion, would Your Honor like me to address the exclusion? The exclusion here excludes from coverage bodily injuries arising from all alleged or actual sexual abuse, molestation or contact, regardless of who committed the act. We're not focused on the claims that are asserted, but rather where do the injuries arise out of? You don't focus on the theory of liability, but the nature of the injuries themselves. And a virtually identical exclusion was upheld in 12th Street gym case. The court there applied both prongs. Section A, which excludes bodily injuries from all arising out of sexual abuse or molestation, as well as B, which focuses on bodily injury arising out of the negligence supervision. We don't know exactly what the injuries are. It could be from the assault when he jumped her initially. And we don't know whether injuries were exclusively from molestation or from physical assault. And so there's a potential. And the court here, and your opponent goes to great lengths to talk about the fact that it's the potential for coverage. It's a duty to defend situation. That's all we're deciding, whether the court was wrong in saying as a matter of law there was a duty to defend because there was the potential. So there certainly is the potential for injuries caused by something other than that exclusion. Your Honor, you must read the complaint, the underlying complaint as a whole. The underlying complaint alleges that this child was sexually abused by the male student on multiple occasions. The only paragraph that the district court relied on to unreasonably conclude that there was non-sexual touching is paragraph 27. What does that state? That he pinned her down. He climbed on top of her. That is all sexual contact. Well, it's not necessarily. More discovery would have to be done as to exactly what happened here in order to rule out anything else other than molestation. Do you not agree? Well. You can't say categorically that there'd be no duty to defend. Well, first of all, when you're dealing and looking at our exclusion, it says alleged sexual assault, abuse, or molestation. So you can make this determination on a duty to defend. And we understand that the duty to defend is construed broadly. However, there are limitations. And you must construe it with the purpose and the scope of the insurance coverage in mind. Right. I have a quick question. In your policy, in more cases, it may be Avelino, possibly Roche. I think it's Roche. The Pennsylvania Superior Court, in 86 cases, goes to some lengths to point out the difference in the change in the language of the no-fault policy. And they distinguish between resulting from and arising out of. Your policy talks about resulting from. It doesn't say arising out of, which would be a lot broader. Why shouldn't we look at that narrower distinction to say that your exclusion does not cover the situation? Because it resulted from, it didn't arise out of. It did arise out of the use of the bus. You're saying it didn't result from. So, Your Honor, the insuring agreement carefully used the words resulting from, which is a narrower test than arising out of. And our exclusion is drafted very broadly so that there is no doubt that this auto liability policy was never intended to cover injuries arising out of sexual assault. How do you distinguish the Lebanon Coach case? Lebanon Coach has no application here whatsoever. Lebanon Coach is a case where a student exits the vehicle, she is struck by another car and pinned to the bus. There is no other instrumentality involved that caused her injuries. Lebanon Coach solely relied on two cases, both of which have the same factual scenario. And the Lebanon Coach court never addressed the long line of Pennsylvania cases. We have Day, we have Roche, we have Schweitzer, numerous others, where there are intervening acts, assaults, fistfights, an explosive bottle that caused the injuries to the claimant. And in all of those cases, they were held not to fall within the scope of an auto policy. We also looked at basically what a school bus does. And what they do is they guarantee the safety of the family on the bus, but the child getting onto and getting off of the bus. And that was seen to be, here in Lebanon, the kid was injured while getting off the bus or after she got off the bus, which was consistent with the bus as a bus. That is correct, Your Honor. The only way that there can be coverage is that if the injuries arise from the use of the bus as a bus. And that is simply not the case here. So just one follow-up question. As I understand it, coverage for use is using the narrow term resulting from. The exclusion for sexual assault uses the broad term arising under. So when you, when your client came up with this policy, they wanted small coverage, or at least a smaller version of the operative phrase coverage, big version of the operative phrase exclusion. Do I have that right? Yes, you do, Your Honor. That is correct. Okay. All right. We'll hear from you on Roboto. Thank you very much. Here's some counsel for Apollese. May it please the Court. Jamie Daugherty for the School District of Pittsburgh. Apollese. Let me ask you, given your position here, can you think of any injury that would occur on the bus that would not be covered? If this isn't covered, I mean, if this is covered, what is the purpose of the exclusion? Thank you, Judge. That's a very good question. I've spent time thinking about that. We reviewed that. And from our position, given the nature of what this transaction was, a contract between Bremar Transit and the Pittsburgh School District to transport children safely to and from school every day, there's nothing that could occur on that bus that wouldn't be subject to at least a policy review for coverage for potential claims. But this is not a situation where we're looking at a policy of safety. We're interpreting what it means to say that something, that injuries resulted from the use of the bus, the use or operation of the bus. That's the operative language here. So, I mean, the fact is that there's a contract to safely transport, that's fine. But there's not a general liability policy. This is how, what, to your mind, what did these injuries result from? Well, they resulted from the failure of Bremar to adequately enforce the agreement that Bremar had with... And the failure of Bremar to adequately enforce is not the use of a bus. Well, but it is in the context of children, common carriers. One thing that I think is interesting to note for the Court, that is certainly in our papers, but here we have a common carrier who has a heightened duty to transport children who are minors. It's not a negligence action. I mean, you can make a duty for civil plaintiff argument here and go down the negligence road. But we're talking about basically a contract and a duty, an obligation which arises from the contract of insurance. So the fact that there may be a general duty doesn't help you much if the language of the contract doesn't include within it coverage for that, which is arising from a breach of the duty that you're arguing to us. And the duty here seems to me to be limited by paragraph A, which talks about coverage and its injuries resulting from the use of recovered auto. And looking at the line, going back to 88, 86, Roche, Alvarino, seems to be particularly pertinent here. All those would suggest that when you have the situation where the injury arises from a bus, not the bus as a bus or qua bus, but the bus, and I think the court in Alvarino even said, where the bus is the mere situs of the injury, that's not the kind of thing the Pennsylvania legislature contemplated in terms of the no-fault insurance policy. They were trying to get at coverage of vehicles being used as vehicles, and that's what they're after, not necessarily an injury that arises from a situation which happens to occur on a bus. Let me ask you a hypothetical question, and this comes from my daughter, actually. Let's assume that two kids are on a bus, and one of them is coloring in a coloring book. And during the course of coloring, the kid with a crayon in his or her hand pulls back her hand and pokes the other kid in the eye, the kid sitting next to her on the bus. Would that be covered under this policy? It would depend upon what the duties of the driver were and what the children were doing. It may be once a year. Where do you get that from the language of section A? Again, you're going to negligence law and duties. Well, I get it from the Lebanon coach case and the Kufo case, which is also cited in our brief. The distinguishing factor here that I don't want to get lost is all of these cases like Alvarino and Roche that my opponent relies upon, the appellant relies upon, deal with personal automobile insurance policies. Not any of the cases cited by them deal with a bus except for one. What is the difference between a personal automobile policy that says injuries resulting from the use of a car and this policy that said injuries resulting from the use of a car? This is a policy that was issued to Grimar by its insurer, National, understanding that the contract for work that required this policy to be placed was to transport children every day to and from school. What does that have to do with, is that incorporated in the policy that, oh, by the way, there's a bus situation, you know, incorporated? Our position is that National was well aware of the fact that there was a contractual obligation to do this. No, but I'm saying, are you saying there's something special about this policy that's a different auto coverage policy? Because I didn't see that in your materials. And we look at the four corners of this insurance policy. We don't look, we're not looking at contracts that anybody has. We're looking at whether this insurer said, I'll cover you for this. Understood. And looking at the four corners of the policy also requires looking at what the case law says, situations like this necessity. Well, Lebanon Coach is distinguishable because there what happened was the coach was being driven into a place that was deemed to be unsafe. The bus was driven to a place to let this girl get off and it was not a safe location. So it was definitely the driving of the bus and the placement of the bus, the operation of the bus that are in injuries resulted from. Here we don't have injuries. How do we have injuries resulting from the use of the bus? Because carrying on, transporting in the bus is in this circumstance use of the bus. And interestingly, in the Lebanon Coach case, the insurer there made the very same argument in that case that the injury didn't result from the bus and the court reversed that position as well. What case do you have that supports your proposition that in response to Judge McKee's first question, which was, is there anything that wouldn't be covered under your theory? And you said basically, no, there isn't anything that wouldn't be covered. And I guess I'm asking for your best authority for the proposition that coverage applies for kind of anything that happens on the bus while it's in operation. Strict liability. You're arguing strict liability. If it's on the bus, the liability is greater. I'm not. You're reading the exclusion out. It strikes me that you're reading the exclusion out. Well, the exclusion is problematic here for the carrier because while Section A, which Judge McKee did, I think, raise earlier, is broad, that's not where that exclusion ends. The exclusion goes on to further limit itself in Subpart B, which deals specifically with negligent employment, supervision, et cetera, to bar coverage for anyone who would be included within A. And so our position with respect to the exclusion is that the carrier's position on this renders whole subparts of that exclusion meaningless, superfluous, which is not how Hornbook insurance coverage law looks at this issue. Our interpretation, which the lower court adopted, is that it's reasonable to read all of these provisions together and that B necessarily more limited in scope, narrower in scope, is the problematic provision here because in this instance, factually, the driver of the bus was not the alleged assailant. So the driver of the bus, had she been the alleged assailant, would have fallen into squarely that Part B and there would have been an exclusion. We wouldn't be here. There'd be a different issue. But because the minor child is the assailant here, the appellant's argument about the minor child being the one who was to have been supervised and was arguably negligently supervised is ridiculous. That's not how that term is commonly understood. It's not how that term is commonly interpreted and it's not how it's written in this exclusion. So our position with respect to the exclusion is the problem is the language in B is narrow and it does not bar coverage in this instance on these facts. And respectfully, the underlying complaint, I think to get to another point, that Judge McKee raised, that is rife, replete with negligence references and there is negligence alleged in what Brymar did or failed to do. And there is an argument that there's an agency relationship between Brymar and the school district and that the school district is liable for the negligence of Brymar in this instance in failing to prevent this incident from occurring.  there is a potential basis for coverage, at least with respect to the duty to defend. Let me ask you a question. If we disagree with you regarding the use of the bus, that the injuries didn't result from the use of the bus, then there's absolutely no coverage and argued Brymar and the school district would have to give back to National all of the monies that they paid, including the settlement costs, wouldn't they? No. Even if this Court were to find that there is no duty to defend because the Court disagreed with our interpretation of use in this instance under Levin and Coach and other cases. What I would say to that is with respect to Brymar, the issue of reimbursement is not even before this Court. It's not been raised. It's not been argued. With respect to my client, the Pittsburgh school district, let's take first the defense costs. The reservation of rights letter that you heard counsel reference earlier from February 14, 2020, I want to be clear, was sent to the mailing address of Brymar. The reservation of rights letter, you're not under the policy anymore. If we find that there's no coverage, National didn't owe a thing. Are you saying that you would also find that we're not uninsured? That's the basic thing. If this Court were to find that we are not insured, we disagree, and I'd like to speak to that, but to address your question more specifically, there is no equitable theory of recovery or reimbursement of defense costs recognized in Pennsylvania, period. So the only right to reimbursement that this appellant carrier has with respect to my client is by contract and by this policy. So if this Court finds that we are not owed a defense, which I differentiate from also not being an insured, if we are not an insured, then the only right of recovery is under some equitable theory that by Pennsylvania law established does not exist for the appellant. No. Well, maybe I'm... Okay, maybe I'm disagreeing or I'm not making myself clear. If we were to determine that Judge Fischer erred as a matter of law in saying that there's a potential for coverage and therefore a duty to defend and we were to define, say that this was the injuries didn't result from the use of the bus, so that there's no coverage, no coverage, we're not under the insurance policy because there's no coverage, you're out of it, why wouldn't National be able to get back everything? Because there would be no theory of liability under which they could do so that would be recognized under Pennsylvania law. Shouldn't they at least be able to get a crack at that through supplementing their complaint to bring such a claim and then you could litigate it under that, in that vehicle or in that context? No, not where this Court found and we agree and think the record is supported that National was dilatory and did not exercise diligence in pursuing its right to amend that complaint. I want to go back and review the... Well, okay, let me just make really clear that I think that under the federal rules there's a distinction between amending a complaint and supplementing a complaint. Amending is basically writing a complete do-over of what happened beforehand. Supplementing is when you add after occurring events to the allegations of a prior complaint. It strikes me that it was labeled as an amendment but this request for reimbursement is really a supplementation and when we paid we'd like it back that happened after the complaint. So if we view it through the lens of supplementation then the District Court's scheduling order which says this is the last day to amend wouldn't apply to supplementation. Well, if we're considering this as supplementation which I agree was not how it was filed and was not how the lower court evaluated it, if this were a supplementation it would still be futile and extremely untimely. The National, the appellant has put forth here an argument that they were simply trying to amend or to use the court's word supplement their pleadings following events that occurred. A settlement that they controlled they negotiated they voluntarily paid without consent or input from us or BRIMAR and an alleged payment of defense costs which again goes back to my timeline Judge of that payment of defense costs was made 13 months after a court Judge Fisher in the Western District found a duty to defend. 13 months. It was made over 3 years after I on behalf of my client tendered my initial defense tendered this claim. What does that do to the merits of the case? What it does is it shows that the things that they were asking to add or supplement to this action could have been brought at the time of the judge's order in January of 2020 were timely then did not change they did not need any of these subsequent events they sat on their rights it was a litigation strategy that changed Putting all that aside after they paid and now want it back why don't we just say we will let you supplement for that? Because then every carrier in the world would do this this is exactly the circumstance that Pacific Indemnity was trying to avoid carriers cannot be in the position of saying no we are not going to respond to a tender claim no we are not going to pick up a defense okay two days before we file an amended complaint we will pay you your defense costs that have already been incurred and then turn around and say no coverage pay us back that is simply not  to happen so three years three years on a tender no response two days before the amended complaint is filed seeking to bring a claim that doesn't exist under Pennsylvania law equitable reimbursement and seeking to make a claim for having paid defense costs my client didn't have the check in hand at the time the motion was filed so that this court is aware so that's significant it's significant because it belies what is in the appellant carrier's papers on this issue this was not about a change in circumstance people try cases all day long and argue cases all day long you can conform your pleadings to the evidence at the end of a case this was a change in litigation strategy because the first plan didn't work and now to hold my client potentially out of coverage on defense and potentially is not insured by this court again I go back to and that's a two step for us as we've set it up in our brief and we believe it to be accurate if the finding were to be we are not insured and there is no defense then my response to this court is again then there is no theory of recovery by which this carrier can get back its money from my district if the finding on the other hand recovery is that if we reverse the district court as to the duty to defend and find there is no duty to defend then they paid that money back under an erroneous ruling and we reverse it and they get the money back what's the only way they get that money back is by the provision of the insuring agreement that they wrote which is construed against them and what is the only way they can get that money  is  the insuring agreement that they wrote against them and that is the only way they can get that money back and that  the  way they can get that money back and that is the